No. 13,309.

CLARK ET AL. v. LOUISVILLE-LAFAYETTE COAL COMPANY.
(43 P. [2d] 386)

Decided April 1, 1935.

Mr. WARWICK M. DOWNING, Mr. RICHARD DOWNING, for plaintiffs in error.

Mr. NORTON MONTGOMERY, Mr. ERSKINE R. MYER, for defendant in error.

*In Department.*

MR. JUSTICE BURKE delivered the opinion of the court.

THESE parties appear here in the same order as in the trial court and are hereinafter designated as there.

Plaintiffs own in fee certain lands in Boulder county, valuable chiefly for their coal deposits. These they leased to one who assigned to defendant and the latter has been operating the property thereunder since early in 1930. It also owns leases on adjoining lands which it has been working, both surface and underground, through those of plaintiffs. Herein the latter sought an injunction to prevent the operation of the adjacent mines through their own, to prevent the dumping of waste material from the former on the latter, and judgment for $8,000 damages, and costs. Defendant demurred for want of facts, misjoinder of causes of action and ambiguity. The demurrer was sustained for want of facts, otherwise overruled. Plaintiffs elected to stand, and to review the judgment of dismissal thereupon entered against them they prosecute this writ. There are no cross-assignments and the only question presented is, Does the complaint state facts sufficient to constitute a cause of action?

The complaint alleges the mining of 80,000 tons of coal from the adjoining properties in the manner complained of; that an implied condition of the lease was the fullest operation of the leased premises; that defendant has largely abandoned such operation and its principal activities are confined to working the adjacent mines through those of plaintiffs, to the neglect of the latter; that defendant claims the right to so conduct its operations under its lease; that it has refused to pay "the stipulated royalty of ten cents for each and every ton of coal of two thousand pounds so mined;" that defendant "has deposited a very large tonnage of waste materials (from said adjoining premises) upon the surface of the land owned by these plaintiffs;" that the sum of $8,000, being ten cents per ton for the 80,000 tons alleged to have been mined from the adjoining premises through those of plaintiffs, is fixed by paragraph 5 of said lease; but that if held otherwise by the court plaintiffs are still entitled to a reasonable "way-leave charge" therefor and that such charge should be fixed by the court. A copy of the lease is attached to the complaint. Said paragraph 5 provides that in the event defendant "shall mine and extract coal from property adjacent to or in the vicinity of the property hereby leased and through the shafts or workings located on the property hereby leased and in the further event that the lessee herein shall pay more royalty and/or a larger minimum royalty than herein provided, then during the time that said adjacent properties in the vicinity are being operated, as aforesaid, then the lessee shall be required during such times to pay royalties and mine royalties to an amount as much as is being paid in said other properties."

It will be observed that plaintiffs' rights, if any, both to injunction and damages, rest upon the assumptions that no right to take coal from adjoining premises has been granted; that such right rests only upon the payment of a royalty, the minimum of which is provided in the lease for coal mined on the premises covered by it, i. e., ten

cents per ton; that this is evidenced by said paragraph 5, and that—as is admitted—no such royalty has been paid. But said paragraph clearly contemplates the working by defendant of the adjoining mines, and as clearly provides special compensation only if the royalty paid on the coal taken from said mines exceeds that on coal taken from this, and there is no allegation of such excess royalties. Otherwise the general consideration for the whole lease stands as consideration for the use complained of. It follows that the court can fix no compensation, as demanded by the complaint, without making a new contract for the parties.

But counsel for plaintiffs say the use complained of is a property right, that it must rest upon a grant, and that the lease contains no grant. They further say that the lease contains but one grant or conveyance; that this is limited to the leased lands, and is found in paragraph 1 of the lease; and that "there is nothing in paragraph 5 which in any way can be construed as a grant or demise of any property rights." They rely principally upon *People ex rel. Breen v. District Court*, 27 Colo. 465, 62 Pac. 206; *Sharum v. Whitehead Coal Mining Co.*, 223 Fed. 282. These and other authorities cited decide nothing more than that no easement such as is here in question exists unless granted. Defendant admits the law, but stands on its lease. Hence these cases need not be discussed. The position of plaintiffs is that on this subject said paragraph 5 of the lease is ambiguous. We think not.

Since said paragraph 5 clearly contemplates the mining of coal from adjacent properties, and provides special compensation therefor only in case royalties in excess of ten cents per ton be paid thereon, the general consideration for the lease must be the consideration for all coal so mined on royalties of that amount or less. Separate promises in a contract require no apportionment of the consideration. 1 Page Law of Contracts (2d Ed.), p. 861, §525. Where a contract discloses the intention of

the parties that certain privileges should form an incident thereof (as this lease certainly discloses with respect to coal mined from adjacent premises on royalties not exceeding ten cents per ton), an easement may be acquired by contract. Jones on Easements, §§104, 106; *Hogan v. Barry,* 143 Mass. 538, 10 N. E. 253; 19 C. J., p. 910, §96. And this irrespective of the form in which such intention may be expressed. *Coudert v. Sayre,* 46 N. J. Eq. 386, 19 Atl. 190; 19 C. J., p. 906, §91.

■ The allegation that defendant has largely abandoned operations under its lease with plaintiffs and is devoting its activities principally to the mining of coal to adjacent lands, contains no statement of fact to support damages or fix the amount, particularly in view of a provision of the lease that a fixed royalty of $100 per month must be paid regardless of operations. Moreover, the lease provides that in case of breach the remedy is forfeiture, but that thirty days notice must be given, with opportunity to remedy, before action may be maintained, and there was here no notice.

The judgment is accordingly affirmed.

MR. CHIEF JUSTICE BUTLER and MR. JUSTICE YOUNG concur.